IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

FILED 7/22/2019
Clerk, U.S. District Court
District of Montana
Helena Division

| | |
|---|---|
| MITCHELL REINHARDT,<br><br>Petitioner,<br><br>vs.<br><br>BNSF RAILWAY COMPANY a Delaware corporation,<br><br>Respondent. | CV 10-27–H–CCL<br><br>OPINION & ORDER |

This case is before the Court on what is essentially a third petition for review of the Montana Human Rights Commission's final agency decision. Mitchell Reinhardt (Reinhardt) filed the initial "Complaint and Petition for Judicial Review" in the Montana First Judicial District Court in April of 2010. (Doc. 4). BNSF Railway Company (BNSF), the respondent in the initial petition, removed the case to federal court on May 21, 2010. (Doc. 1). This Court remanded the case twice to the Montana Human Rights Commission (MHRC), which reversed its ruling on the second remand, resulting in BNSF filing a "Notice of Final Agency Decision of the Human Rights Commission, Objection, and Petition for Briefing Schedule." (Doc. 63). The matter having been fully briefed and no party having requested oral argument, the Court is prepared to rule.

**LEGAL STANDARDS**

This case was removed based on diversity jurisdiction. In 2011, the United States Court of Appeals for the Ninth Circuit held that federal district courts have diversity jurisdiction over cases involving "on-the record review of a Montana administrative agency decision" when the prerequisites for diversity jurisdiction are met. *BNSF Railway Co. v. O'Dea*, 572 F.3d 785, 791 (9th Cir. 2009), *cert. denied*, 558 U.S. 1115 (2010). As a general rule, this Court looks to the state law of the forum state when considering cases based on diversity jurisdiction. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 73 (1938). This Court looks to both Montana state law and federal law in deciding the substantive issues raised by this case because the issues involve interpretation and application of the Montana Human Rights Act (MHRA) and the "Montana Legislature has indicated its clear intent that the MHRA be interpreted consistently with federal discrimination statutes and case law." *BNSF Railway Co. v. Feit*, 281 P.3d 225, ¶ 8 (Mont. 2012). The Montana Supreme Court has "relied on federal case law as well as the federal Equal Employment Opportunity Commission (EEOC) regulations and interpretive guidelines in construing Montana's discrimination laws." *Id*.

The Court also looks to Montana law to determine the standards for conducting its judicial review. Under Montana law "[t]he review must be

conducted by the court without a jury and must be confined to the record." Mont. Code Ann. § 2-4-704(1) (2017).

> The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
>     (a) the administrative findings, inferences, conclusions, or decisions are:
>       (i)    in violation of constitutional or statutory provisions;
>       (ii)   in excess of the statutory authority of the agency;
>       (iii)  made upon unlawful procedure;
>       (iv)  affected by other error of law;
>       (v)   clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
>       (vi)  arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>     (b) findings of fact, upon issues essential to the decision, were not made, although requested.

Mont. Code Ann. § 2-4-704(2) (2017).

**BACKGROUND**

Terry Spear, a Hearing Officer for the Montana Department of Labor and Industry, conducted a contested case hearing in Reinhardt's administrative case in August of 2009. In his November 24, 2009, decision Spear found that BNSF "did not illegally discriminate in employment because of age or disability against Mitchell Reinhardt as alleged in his complaint." (Doc. 26-1). Reinhardt sought

judicial review after the MHRC affirmed Spear's decision.

In its February 6, 2012 order, this Court found that "the facts were adequately stated by the hearing officer in his final decision dated November 24, 2009, and are not in dispute." (Doc. 30 at 4). The Court disagreed with the Hearing Officer's application of the law to those facts, holding that the "evidence clearly shows that BNSF personnel judged Reinhardt to be physically incapable and possibly too old to perform his job adequately or safely" and terminated him on that basis. (Doc. 30 at 9). The Court held that the Hearing Officer made a legal error by using the *McDonnell Douglas* burden-shifting test even though Reinhardt "presented a *prima facie* direct-evidence case of discrimination based on a perceived physical disability." (Doc. 30 at 19). The Court reversed the final agency decision and remanded the case to the MHRC "for further analysis of Reinhardt's direct evidence and BNSF's defenses thereto." *Id*.

On remand, Hearing Officer Spear "revisit[ed] the facts in light of the direct evidence analysis that needs to be applied to them." (Spear 2 at 1).[1] After purportedly applying that analysis, Hearing Officer Spear made no change to his conclusions of law and order. (Spear 2 at 19). Apparently recognizing that

---

[1] Spear's second decision is dated March 11, 2013, and is titled "On Remand: Hearing Officer Decision and Notice of Issuance of Administrative Decision." For the sake of clarity, the Court will reference the decision as Spear 2.

4

Hearing Officer Spear had not fully complied with the directions given in this Court's remand order, the MHRC remanded the case to Spear, who issued a third order. The MHRC rejected Spear's third order and reinstated the March 11, 2013, order.

Reinhardt than moved this Court for an order remanding the matter back to the MHRC again. (Doc. 47). This Court granted Reinhardt's motion, noting in its remand order that the Hearing Officer's second decision failed to make factual findings under the direct-evidence standard and directing that findings be made as to the following issues: "the procedural steps that the employer followed prior to the termination, and whether the employer conducted an independent assessment of the risk of substantial harm, investigated reasonable accommodations, and engaged in an interactive process to identify appropriate reasonable accommodations that would ameliorate any risk of harm." (Doc. 60 at 4).

On remand, Chief Administrative Law Judge David A. Scrimm "assumed control of the case due to the retirement of Hearing Officer Spear." (Doc. 63-2 at 1). Hearing Officer Scrimm reviewed the record in its entirety and made findings of fact, many of which were drawn from Hearing Officer Spear's second order. Hearing Officer Scrimm held that BNSF discriminated against Reinhardt based on his perceived disability but would have discharged Reinhardt at the end of his

probationary period, resulting in an award of only those wages Reinhardt would have earned until the end of his probationary period.  Hearing Officer Scrimm also awarded Reinhardt $10,000 in emotional distress damages.  (Doc. 63-2 at 28).

The MHRC affirmed Hearing Officer Scrimm's decision in its entirety, effectively making Hearing Officer Scrimm's decision the final agency decision.  (Doc. 63-1 at 3).  BNSF now seeks judicial review of the final agency decision.

**DISCUSSION**

BNSF challenges the MHRC's final agency decision on five separate grounds.

<u>Argument I</u>.

BNSF argues that the MHRC "acted arbitrarily and capriciously and exceeded its authority in omitting certain unchallenged findings of fact and including new findings on issues not related to the remand." (Doc. 65 at 9).  In essence, BNSF asks this Court to reject any finding made by Hearing Officer Scrimm that disagrees with, amends, or supplements the findings made by Hearing Officer Spear in his second decision.  BNSF relies on *Mayer v. Bd. of Psychologists*, 321 P.3d 819, ¶ 29 (Mont. 2014) to support its argument that Hearing Officer Scrimm was bound by the factual findings made by Hearing Officer Spear in his second opinion because Reinhard failed to challenge those

6

factual findings and Hearing Officer Scrimm did not conduct an evidentiary hearing. (Doc. 65 at 10).

Although the Montana Supreme Court agreed with the petitioner in *Mayer* "that it is not appropriate for a board to substitute its judgment for that of the hearing officer as to the credibility of witnesses and the weight to be given their testimony," it nevertheless concluded that the Board of Psychologists' decision was properly affirmed by the state district court. *Mayer*, 321 P.3d at ¶¶ 29, 31. There is nothing in *Mayer* to support BNSF's argument that this Court should reject Hearing Officer Scrimm's findings because he relied on the existing record and did not conduct an evidentiary hearing.

This Court previously determined, in its second remand order, that Hearing Officer Spear had failed to make factual findings under the direct-evidence standard and directed that findings be made as to certain issues. These additional findings were necessary because Hearing Officer Spear had failed to follow the instructions in the first remand order by applying the proper law to the largely undisputed facts. In following the Court's remand, Hearing Officer Scrimm found additional facts from the existing record, which did not require assessing witness credibility. The fact that Hearing Officer Scrimm reached a different conclusion than Hearing Officer Spear does not demonstrate that he acted arbitrarily and

7

capriciously; it instead shows that Hearing Officer Scrimm, unlike Hearing Officer Spear, applied the correct law, and followed this Court's instructions.

Argument II.

BNSF next argues that the MHRC should have followed the general rule that an employer is not required to engage in the interactive process unless the employee first notifies the employer of his condition and requests an accommodation and erred by applying the exception recognized by the United States Court of Appeals for the Second Circuit in *Brady v. Wal-Mart Stores, Inc.,* 531 F.3d 127 (2d Cir. 2008). (Doc. 65 at 14 - 15). BNSF contends that Reinhardt's reliance on *Brady* is misplaced because the "employer there plainly had substantially more information than BNSF had about Reinhardt" and because the Ninth Circuit effectively rejected the *Brady* approach in *Brown v. Lucky Stores*, 246 F.3d 1182, 1188 (9th Cir. 2001) and "applies an exception for known disabilities *only* if the plaintiff's disability prevented the plaintiff from asking for an accommodation." (Doc. 69 at 5 - 6)(emphasis in original).

The United States Court of Appeals for the Ninth Circuit first addressed the

"nature and scope of an employer's obligation to engage in the interactive process" in *Barnett v. U.S. Air, Inc.* 228 F.3d 1105, 1108 (9th Cir.2000) *vacated sub nom. on other grounds by U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). Far from rejecting the *Barnett* approach in *Brown*, the Ninth Circuit acknowledged in its then recent *en banc* ruling "that the interactive process for finding a reasonable accommodation may be triggered by the employer's recognition of the need for such an accommodation, even if the employee does not specifically make the request." *Brown*, 246 F.3d at 1188 (citing *Barnett*, 228 F.3d at 1112).

This case can be distinguished from *Brown* because Reinhardt was terminated based on a perceived disability. The Montana Supreme Court addressed this issue before the Ninth Circuit, holding that the burden to request an accommodation does not fall on the employee when the employee does not realize that his "disability pose[s] a threat to [his] continued employment. *Reeves v. Dairy Queen*, 953 P.2d 70, ¶ 43 (Mont. 1998). The MHRC did not err by applying the *Brady* exception and holding that Reinhardt was not required to request an accommodation.

Argument III.

BNSF next challenges the MHRC's "factual findings that BNSF did not conduct an independent assessment or risk-of-harm analysis." (Doc. 65 at 17). In its reply brief, BNSF argues that these findings are "clearly erroneous and unsupported" because the "substantial credible evidence demonstrates that the entire probationary period at BNSF is an interactive process and constitutes an individual assessment." (Doc. 69 at 10). The MHRC found that "BNSF did not seek to engage Reinhardt in an interactive process even though it perceived him as disabled." (Doc. 63-2 at 12, ¶ 44). That finding is supported by the findings preceding and following it and by the record as a whole.

The MHRC also found that BNSF failed to perform a risk of harm analysis before deciding to terminate Reinhardt. (Doc. 63-2 at 15, ¶ 57). That finding is also supported by the record. This Court will not substitute its judgment for that of the Montana Human Rights Commission.

Argument IV.

BNSF argues that the MHRC erred by imposing liability without requiring Reinhardt to establish that there was some accommodation that would have allowed him to safely perform the job from which he was terminated. (Doc. 65 at

10

25). Although failure to engage in the interactive process is not in and of itself a violation of the Montana Human Rights Act, BNSF's failure to engage in the interactive process is combined in this case with direct evidence that BNSF discriminated against Reinhardt based on his perceived disability. In addition to depriving Reinhardt of the opportunity to engage in the interactive process, BNSF failed to conduct the risk assessment necessary to support its safety defense. The MHRC correctly determined that Reinhardt did not have a duty to demonstrate the existence of a reasonable accommodation.

Argument V.

BNSF argues that Reinhardt is not entitled to damages under the mixed-motive analysis. BNSF argues in the alternative that the damage award is excessive because Reinhardt is not entitled to emotional distress damages.

Montana law prevents the MHRC from "awarding compensation for harm to the charging party caused by an adverse action that would have been taken by the respondent regardless of an unlawful discriminatory or retaliatory motive." Mont. Admin. R. 24.9.611 (2019). The MHRC held that "[h]ad BNSF engaged in the interactive process and determined the extent of [Reinhardt's] disability, it is more

11

likely than not that BNSF would have discharged Reinhardt upon the completion of that process." (Doc. 63-2 at ¶ 63). The MHRC nevertheless awarded damages through the end of the probationary period based on the finding that "had BNSF conducted the risk of harm analysis and engaged Reinhardt in the interactive process, it is more likely than not that Reinhardt would have been employed at least until the end of his probationary period." (Doc. 63-2 at 27). Both of these findings are supported by the facts in the record.

Reinhardt suffered damages as a result of BNSF's decision to terminate him before the end of his probationary period without engaging in the interactive process. The MHRC correctly concluded that Reinhardt is entitled to compensation for the period he could have continued working between his premature termination and the end of his probationary period.

The MHRC based the $10,000 emotional distress damage award on the shock Reinhardt experienced when learning that he was being discharged despite performing his duties in connection with the Hettinger run and before the results of that run were provided to the official who terminated Reinhardt's employment. (Doc. 63-2 at 17, ¶ 65). Reinhardt testified that he was devastated by his

termination from employment and that it led to the end of a long-term relationship with a girlfriend. There was sufficient evidence in the record to support the award of $10,000 in damages for emotional distress.

**CONCLUSION & ORDER**

As explained above, the MHRC has corrected the legal errors that led the Court to grant the initial petition for review and twice remand this case for additional factual findings. The factual findings made in the final agency decision are supported by the record and the legal conclusions are correct. Accordingly,

IT IS HEREBY ORDERED that the final agency decision of the Montana Human Rights Commission is affirmed in its entirety.

The Clerk of Court is directed to enter judgment in accordance with this order.

Dated this 22nd day of July, 2019.

_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE